EDWARD SPENCER HALL, Plaintiff, *v.* HERTER BROTHERS, Defendant.

*Corporation — assumption by it of pre-existing contracts of a firm — evidence of their adoption — informal transaction of its business.*

The assumption by a corporation, organized through the instrumentality of partners, and carrying on the business formerly transacted by the firm, of a contract procured by such firm, does not necessarily carry with it the assumption of all other contracts which such firm had entered into for the purpose of obtaining and executing the contract assumed.

Where a corporation was created, to which the business and property of a firm was transferred, although there was no agreement on the part of the corporation to assume the obligations of a contract made by the firm, it is within the power of the corporation to assume such contract, and such assumption need not be by any resolution or formal action on its part, nor by an instrument in writing, nor by any oral agreement in terms providing for the assumption thereof. If it be shown that it was intended by both parties to the original contract, and by the directors and officers of the corporation who were stockholders thereof, that the contract should be assumed by the corporation, the assumption thereof by it may be deemed established.

While a corporation is not bound by engagements made on its behalf by its promoters before its organization, it may, after it is organized, make such engagements its own by adopting them, and less evidence tending to show such adoption will be required to establish it, where the officers of the corporation were also its promoters, than where its officers and promoters were different persons.

Where a corporation consists of a small number of persons it may transact ordinary business without the formality of resolutions; it may be transacted by conversation, without formal votes.

MOTION by the plaintiff, Edward Spencer Hall, for a new trial on a case containing exceptions, ordered to be heard at the General Term in the first instance upon the dismissal of the complaint directed by the court, after a trial before the court and a jury at the New York Circuit on the 6th day of April, 1894.

*C. N. Bouvee, Jr.*, for the plaintiff.

*Julius H. Seymour*, for the defendant.

PARKER, J.:

The plaintiff, in January, 1890, made a contract with the firm of Herter Brothers, under which he claims there is over $3,000 due, and this sum, he says, Herter Brothers, a corporation, is legally bound to pay.

William Baumgarten and William G. Nichols were for a number of years, prior to the month of January, 1891, partners doing business under the firm name of Herter Brothers. During that month Baumgarten and Nichols promoted a corporation under the name of Herter Brothers, joining with themselves, as incorporators, a brother of Baumgarten, Nichols' father and Arthur Norton, their salesman. To this corporation there was conveyed and transferred all the real and personal property of the partnership. The instrument by which all of the partnership property of Herter Brothers was turned over to the corporation Herter Brothers contained no promise to pay the debts of the partnership. About a year prior to this transaction plaintiff entered into a contract of employment with the firm of Herter Brothers, by which he was to receive five per cent commission for obtaining and supervising the execution of contracts in the line of business in which the firm was engaged, the plaintiff to draw from the firm during the year seventy-five dollars a week on account, and at the end of the year his account to be credited or debited, dependent upon the amount of commissions earned by him during the year, and the balance paid to him, if a credit, and charged to him, if a debit. Thereafter plaintiff entered into negotiations with W. L. Elkins for fitting and decorating his house. He prepared estimates in connection with the partners for doing the work, which called for $68,860. Subsequently, Mr. Elkins' representative informed the firm that it would be impossible to accept the estimate in competition with other houses, and that it should be lowered. It is claimed on the part of the defendant that there were conversations between Baumgarten and plaintiff about cutting down the estimate $5,000, the result of which was a special agreement between them that plaintiff should accept one-half commissions on that particular contract rather than lose it, and that the rest of the deductions should be borne by the firm. The fact is that the contract was entered into between Elkins and Herter Brothers, and by reason of the extra work done the total sum paid by Elkins to the firm and corporation of Herter Brothers was $127,225. On this amount commissions at the rate of two and one-half per cent were paid to the plaintiff before the commencement of this action. He seeks now to recover the other two and one-half per cent.

The question whether the plaintiff and Herter Brothers made a

special agreement, as contended by the defendant, with reference to the Elkins contract was not reached in the trial court, the court holding that the plaintiff had failed to show that the corporation of Herter Brothers had assumed the liabilities of the firm of Herter Brothers.

We have omitted to say that the corporation took up and carried out all the contracts which the firm of Herter Brothers had made for the fitting and decoration of buildings, including the Elkins contract. From the record which comes to us of the discussion between the learned trial judge and the counsel for the plaintiff at the close of the testimony, we understand that the plaintiff largely relied upon the assumption of the Elkins contract by the corporation to support. plaintiff's right of recovery. He contended that inasmuch as Hall procured the contract with Elkins, and was under agreement to supervise it until its completion, the assumption of the Elkins contract by the corporation necessarily carried with it the assumption of all other contracts which Herter Brothers had entered into for the purpose of obtaining and executing the Elkins contract. This, we think, was a mistaken view, and, without stopping to discuss the authorities which appellant has cited, we concur in the position taken by the trial court on that question. The contract which Herter Brothers had with this plaintiff had no connection with the contract which they had with Elkins. Their contract with the plaintiff was not only entered into months before the Elkins agreement, but was intended to secure the services of the plaintiff in procuring, not the Elkins contract, but as many contracts as possible.

It required more of him than that he should obtain the contracts. He was to supervise them as well.

They were entirely independent contracts, and it was within the power of the corporation to assume the carrying out of either one of them, without being bound to fulfill the contract with the firm of Herter Brothers as to the other. But the record presents another question, and that is, whether there was not such evidence of assumption of plaintiff's contract by the defendant as entitled him to have that question submitted to the jury? It was within the power of the corporation to assume the contract which the partnership had with the plaintiff, as well as the Elkins contract. Not by any resolution or formal action on the part of the incorporators of

· First Department, December Term, 1894.          [Vol. 83.

the corporation, by an instrument in writing or by any oral agreement, was it in terms provided that the partnership obligation under the contract with Hall should be assumed by the corporation.

But the evidence on that subject is such as tends to support the inference that it was intended by both parties to the original contract and the directors and officers of the corporation, who were the stockholders as well, that it should be assumed by the corporation. ·

This brings us to the question, whether there is not evidence of such conduct on the part of the corporation and its officers as would authorize a finding that the corporation ratified, adopted and made binding the informal and unenforcible understanding which a jury might find from the evidence to have existed — an understanding which induced action on the part of plaintiff, of which the defendant received the benefit.

While a corporation is not bound by the engagements made on its behalf by its promoters before its organization, it may, after it is organized, make such engagements its contracts by adopting them as its own. Less evidence tending to show adoption will be required to establish it where the officers were also the promoters, than where the officers and promoters were different persons. It should be borne in mind as we refer to the acts tending to show adoption of the partnership contract with the plaintiff, that there were but five incorporators of this corporation, and their relation to the business of the firm of Herter Brothers, which became Herter Brothers, a corporation, was as follows : William Baumgarten and William G. Nichols constituted the partnership ; Arthur Norton was a salesman and had been in the employ of the firm ten or twelve years ; Emile Baumgarten was a brother of William, and had been in the employ of the firm a year or two ; William S. Nichols was the father of William G. Nichols, one of the partners, and the stock which was subscribed by the incorporators, other than the partners, was given to them in order to qualify them for the purposes of incorporation. After incorporation its officers were as follows : William Baumgarten, president ; William G. Nichols, vice-president and treasurer, and Arthur Nichols, secretary. Now, when there are so few interested in the management of a corporation, ordinary business may be transacted without the formality of resolutions. It may be done by conversation without formal votes. (*Melledge* v.

*Boston Iron Co.,* 5 Cush. 158; *Sheridan Elec. Light Co.* v. *Chatham Nat. Bank,* 52 Hun, 582.)

In the latter case the trustees of the plaintiff were five in number, one of whom never qualified or acted, and another of whom had been present at only one of the earlier meetings of the board. The court said : " The stock of the company was substantially owned by the three members of the committee, and by Mr. Sheridan, for the employment of whose inventions it was incorporated. And where that is the nature of the corporation it is not essential that the selection of the committee should be by formal resolution of the board of trustees entered in their minutes. For it has been held that ' where a corporation consists of a small number of persons, like a partnership, they may transact all their business by conversation without formal votes.' "

Some features of the testimony tending to show an adoption of plaintiff's contract with Herter Brothers will now be referred to. In the first place the president of the corporation testified : " We also had several conversations with Mr. Hall, requesting him to continue under the same conditions with the corporation that he had under the old co-partnership — continue the same way he did before. That has been repeatedly discussed by Mr. Nichols and myself with him. All of the debts of the partnership were paid by the corporation. All of my associate incorporators knew of the existence of Mr. Hall's contract and of the Elkins contract."

The Mr. Nichols referred to in Baumgarten's testimony was the vice-president and treasurer and one of the principal stockholders of the corporation. From Baumgarten's testimony the inference may be legitimately drawn that Hall was informed by him after the incorporation that he was to have the same commissions on sales, and continuance of sales, as before. The plaintiff assented to this proposition and thereafter continued to supervise and attended to the execution of their contracts, including the Elkins contract, about which the officers frequently conferred with him. It should be borne in mind that plaintiff's work was not ended when he had procured the making of the contract between Herter Brothers and Elkins. The receipt of his commissions was further made dependent upon his attending to the supervision and completion of the contract; and he not only continued to supervise the work, which

seems to have been done to the entire satisfaction of the corpora-
tion, but he was given instructions and directions by the officers
during its performance.

January 11, 1892, nearly a year after the incorporation, defend-
ant, in response to plaintiff's request for settlement, sent him the
following letter:

> " HERTER BROTHERS, 154 FIFTH AVENUE.
>
> " WM. GILMAN NICHOLS, *President and Treasurer.*
> " ARTHUR NORTON, *Vice-President and Secretary.*
>
> " NEW YORK, *Jan.* 11, 1892.
> " E. S. HALL, Esq. :
>
> " DEAR SIR — Enclosed herewith find check for $400 on acct.
> There are several matters to be settled up yet, such as Barney,
> Rose & Stone, and the Elkins matter, and if you will do your share
> and hasten what you can to a settlement of these accounts you, of
> course, will receive a prompt settlement in all these and other
> matters; do what you can.
>
> " Yours very truly,
>
> " HERTER BROTHERS.
> " H. B. DECOSTA."

This letter, it will be observed, contained a distinct recognition of
the fact that he was at work upon the contracts in which the cor-
poration was interested, including the Elkins contract, and, further,
an assurance that defendant would pay him as soon as matters
should be closed up.   About a month later defendant paid plaintiff
commissions at the rate of two and one-half per cent on the entire
amount of the Elkins contract, and the reason assigned for refusing
to pay the other two and one-half per cent, when it was demanded by
the plaintiff, was not that the defendant was under no obligation to
pay him his commissions, but that there were only two and one-half
per cent commissions due him on the Elkins contract, because of a
special agreement entered into by him with the firm at the time the
contract was taken, that two and one-half per cent as to that
particular contract should be received by him as full compensation
for his services.

We are not called upon to express any opinion upon the merits
of that question, for under the evidence adduced it was for the jury
to determine whether he was entitled to full or one-half commis-

sions on the Elkins contract, should they first find in his favor upon the question we have suggested.

Our duty is ended when we announce the conclusion at which we have arrived, that under this evidence the plaintiff was entitled to have the jury say whether the defendant is chargeable with having assumed the obligations of the contract of the plaintiff with the firm of Herter Brothers. The plaintiff's exceptions should be sustained and a new trial ordered, with costs to plaintiff to abide the event.

VAN BRUNT, P. J., and O'BRIEN, J., concurred.

Plaintiff's exceptions sustained and new trial ordered, with costs to plaintiff to abide event.