### MARTIN v. REMINGTON–MARTIN CO. et al.

(Supreme Court, Appellate Division, Third Department.    May 4, 1904.)

1. CORPORATIONS—LEGISLATIVE CONTROL.

A corporation is subject to the general statutes of the state of its organization applicable to its conduct and management, as well as to the reservation of the right on the part of the Legislature to alter its charter by subsequent laws, and a stockholder must be regarded as consenting not only to the existing law, but to such alterations as may be made.

2. SAME—CONTRACT BETWEEN PROMOTERS.

A corporation is not bound by an agreement between its promoters unless it has been ratified by the corporation.

3. SAME—ISSUE OF ADDITIONAL STOCK—CONTRACT BETWEEN PROMOTERS—CONSTRUCTION OF CONTRACT.

Stock Corporation Law (Laws 1900, p. 1074, c. 564) §§ 44–46, authorize a corporation to increase its capital stock by a vote of a majority of the shares of stock, and by General Corporation Law (Laws 1890, p. 1062, c. 563) § 11, a corporation may make by-laws for the management of its affairs.    Plaintiff and another promoted a corporation, and contracted that there should be $150,000 of common stock, that the property they placed in the corporation should be taken at a valuation of $50,000, and that plaintiff should have one-sixth of the plant.    The corporation was organized under the stock corporation law, and $25,000 worth of stock issued to plaintiff; and a by-law provided that whenever the capital stock of the corporation should be increased each bona fide stockholder should be entitled to purchase at par an amount of stock in proportion to the number of his shares.    *Held* that, in the light of the circumstances and the law, the contract did not mean that additional stock should not be issued when done in good faith, and for the benefit of the corporation.

Appeal from Judgment on Report of Referee.

Suit by Orrin E. Martin against the Remington-Martin Company and others.    From a judgment in favor of plaintiff, defendants appeal.    Reversed.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

Brown, Carlisle & Hugo, for appellants.
Robert E. Waterman (Vasco P. Abbott, of counsel), for respondent.

HOUGHTON, J.    The plaintiff and appellant Charles H. Remington were joint promoters of the defendant corporation.    Options for valuable water privileges had been obtained, and they entered into a written agreement between themselves that said water power should be purchased, and a corporation formed with capital stock consisting of $150,000 of common and $75,000 of preferred stock, or such larger sum as might be necessary to provide funds to erect a manu-

¶ 2. See Corporations, vol. 12, Cent. Dig. §§ 1789, 1790.

facturing plant, with a bonded indebtedness of $150,000. $50,000 of the common stock was to be transferred to the plaintiff and Charles H. Remington in equal shares for the water rights and lands connected therewith. The corporation was organized as a busines corporation under the stock corporation law, the plaintiff signing the articles of incorporation, with a capital stock of $300,000, one half common and the other half preferred; the shares being $100 each. The corporation took title to the water rights, and legally issued to the plaintiff and Charles H. Remington the $50,000 of common stock, one-half to each, in payment therefor. Charles H. Remington purchased additional amounts of both issues of stock, so that now he is the owner of 700 hundred shares of the common stock and 250 shares of the preferred. Without complaint on the part of the plaintiff, so far as appears, the bonded indebtedness was increased to $250,000; and there has been expended, in addition to the avails of the stock and bonds, in the erection and equipment of the plant, about $480,000, which remains unsecured and owing by the corporation. Defendant Charles R. Remington was also one of the incorporators, and became the purchaser of 190 shares of common and 443 shares of the preferred stock, and was made president of the corporation, in accordance with the agreement between plaintiff and Charles H. Remington. Proceedings were duly taken to increase the common stock of the corporation from $150,000 to $350,000, whereupon the plaintiff brought this action to restrain such increase on the ground that by his agreement with Charles H. Remington he was to have, and to continue to have, a one-sixth interest in the common stock of the corporation. Charles R. Remington was alleged to be cognizant of this agreement, and the complaint demanded that he as well as Charles H. be restrained from voting such increase; the two together holding a majority of both issues of stock. The referee found, as matter of fact, that the project to issue additional common stock was in good faith, and not for the purpose of injuring the plaintiff, but for the legitimate purpose of raising money for the proper uses of the corporation; but notwithstanding, found that the plaintiff was entitled to the injunction asked, and restrained the corporation and the two Remingtons from issuing the additional stock proposed.

The claim of the plaintiff is based upon the written agreement, wherein it is stated that it is "understood and agreed that the capital stock of the company is to consist of $150,000 of common stock," together with such preferred stock as is provided; and also upon a conversation had prior to the execution of the written agreement, wherein Remington had said that they would put the water rights in at $50,-000, and that plaintiff was to have "one-sixth of the plant." This oral evidence was objected to on the ground that it was part of the negotiations which were finally merged in the written agreement. But waiving this question, and assuming that this evidence is properly in the case, we think that neither the written agreement nor the oral evidence entitles the plaintiff to the judgment which he has obtained. The plaintiff was a director of the corporation, and a regular attendant upon its meetings, and participated in the enactment of one of its by-laws, which provided that whenever the capital stock of the

corporation should be increased each bona fide stockholder should be entitled to purchase at par an amount of stock in proportion to the number of his shares. At the time he received his stock, and ever since, it was the law that a corporation like the defendant might increase its capital stock, upon the observance of certain requirements, by a vote of a majority of all the shares of stock. Stock Corporation Law (Laws 1890, p. 1074, c. 564) §§ 44–46. It was also the law that the defendant corporation, as well as every other corporation, might make reasonable and lawful by-laws for the management of its property and the regulation of its affairs. General Corporation Law (Laws 1890, p. 1062, c. 563) § 11. A corporation is subject to the general statutes of the state of its organization applicable to its conduct and management as well as to the reservation of the right on the part of the Legislature to alter its charter by subsequent laws, and a stockholder must be regarded as consenting not only to the existing law, but to such alterations as may be made. Union Hotel Company v. Hersee, 79 N. Y. 454, 35 Am. Rep. 536; Mayor, etc., v. Twenty-Third Street Railway Co., 113 N. Y. 311, 21 N. E. 60; General Corporation Law (Laws 1895, p. 452, c. 672) § 40. The law gave the defendant corporation the right to increase its stock for legitimate purposes upon a majority vote of its stockholders, and the plaintiff holds his stock subject to that right. Even if the agreement between the plaintiff and Charles H. Remington shall be interpreted as claimed by the plaintiff, the defendant corporation is not bound by it. A subsequently formed corporation is not bound by an agreement between its promoters. Dillon v. Commercial Cable Co., 87 Hun, 444, 34 N. Y. Supp. 370. It is only where such an agreement is ratified by the corporation that it becomes binding upon it. Oakes v. The Cattaraugus Water Co., 143 N. Y. 430, 38 N. E. 461, 26 L. R. A. 544; Bommer v. Am. Spiral Spring Hinge Mfg. Co., 81 N. Y. 468; Hall v. Herter Brothers, 83 Hun, 19, 31 N. Y. Supp. 692. The cases of Kent v. Quicksilver Mining Co., 78 N. Y. 159, and Campbell v. American Zylonite Co., 122 N. Y. 455, 25 N. E. 853, 11 L. R. A. 596, relied upon by the respondent, are not applicable to the situation in the present case. In those cases there was an attempt to change the character of stock held by the stockholder, and give another class preference, against his protest. Manifestly, such action could not be taken. The increase of capital stock does not change the character of old or new. It is true that it widens the field for distribution of dividends, but such increase is an inherent right reserved, to which, if done in a legal manner, the stockholder must be deemed to have subjected himself when he purchased his stock.

In addition, we do not think the agreement between the plaintiff and Charles H. Remington can be interpreted as claimed by the plaintiff and as found by the referee. Assume that Remington did say the plaintiff was to have one-sixth of the plant. That language must be interpreted in view of the surrounding circumstances and in the light of the law affecting corporations. The capital stock, as then talked, was $150,000 of common. The plaintiff was to have $25,000 of that, which was one-sixth. The language of the written agreement is that the capital stock "is to consist" of $150,000 of common. This

has been carried out. There was no agreement that the stock, in view
of the necessities of the corporation, should never be increased. The
referee has expressly found that the increase was in good faith, and
to meet the requirements of the corporation. The defendant Charles
R. Remington was not a party to any agreement with the plaintiff,
and it is difficult to see why he should be restrained from voting the
stock which he has purchased in such manner as he sees fit. The
corporation has a floating indebtedness of nearly a half a million of dol-
lars. So far as the future equities of the plaintiff are concerned, it
would seem more advantageous to him that there should be an in-
crease of stock to pay at least a portion of the indebtedness, rather
than that the whole should be paid by additional bonds or the issuing
of preferred stock, which would take precedence of his own.

The judgment was unauthorized, and should be reversed, with costs
to the appellant to abide the event, and a new trial granted. All con-
cur.